**DAVID K. BERTAN**
ATTORNEY AT LAW
41 EAST 11TH STREET, 11TH FLOOR
NEW YORK, NEW YORK 10003

(718) 742-1688
E-MAIL: DBERTAN@YAHOO.COM

January 4, 2023

*Via ECF*

Hon. P. Kevin Castel, United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Hon.

      Re:    USA v. Michael Ashley (US v. Ra, et. al.)
              20-Cr-601 (PKC)

Dear Judge Castel:

      Mr. Ashley was mostly successful in moving forward from his actions in his younger days. Aside from a minor issue with marijuana in 2020, Mr. Ashley had clearly turned a corner in his life. He had been working consistently for the same company for a number of years, was involved in a mature relationship with his daughter's mother, helping her to achieve her own career goals while he took care of the domestic duties, all while working full-time, and was otherwise doing well. Then, Fernando Ra reached out to him, and Mr. Ashley sadly slipped into this conspiracy, helping Ra by delivering cocaine on three occasions.

      Mr. Ashley recognizes the harm he has done to his community, to his family, and to himself as a result of his actions. He is remorseful, and hopes that this Court will allow him a second chance to show he can live a law-abiding, productive life.

Mr. Ashley was arrested on April 23, 2021, and was charged under Count 4 of the superseding indictment with participating in a narcotics conspiracy in violation of 21 USC 841 (b)(1)(A). On March 22, 2022, in accordance with a plea agreement dated February 14, 2022, Mr. Ashley pled guilty to the reduced charge of participating in a narcotics conspiracy under 21 USC 841 (b)(1)(B). At that time, Mr. Ashley admitted his participation in the narcotics conspiracy.

## The Sentencing Guidelines

Under the plea agreement, Mr. Ashley's guidelines calculation starts with a base offense level of 26 (2D1.1(c)(7)). Mr. Ashley is entitled to a two-level reduction for the "safety valve" (2D1.1(b)(18)), and another three-level reduction for his timely acceptance of responsibility (3E1.1(a) and (b)). The resulting offense level is 21.

Mr. Ashley has two criminal history points; the first stems from a conviction for unauthorized use of a motor vehicle, and the second for attempted criminal possession of a controlled substance. Both convictions are from 2014, when Mr. Ashley was 23. Mr. Ashley is in Criminal History Category II.

In light of the foregoing, Mr. Ashley's advisory Guidelines sentencing range is 41-51 months. Although the statutory sentence has a minimum of 5 years, Mr. Ashley qualifies under 18 USC § 3553 (f) for a sentence below the statutory minimum[1].

## The Appropriate Sentence

In order to impose a fair and just sentence, the sentencing court must consider the factors set forth in 18 USC § 3553 (a)(1) and (2). Under the first section, the court must consider the nature and circumstances of the offense, and the defendant's history and characteristics.

At the outset, there is no question Mr. Ashley admitted to a serious offense. However, in his favor, he was not the prime mover of the conspiracy, and instead was a relatively minor player. Moreover, Mr. Ashley candidly

---

[1] Probation agrees with this calculation: *see* paragraphs 30-52.

admitted to his participation. With regard to the second factor, his history and characteristics, Mr. Ashley presents an interesting conundrum to this Court as it considers Mr. Ashley's sentence. The Court is faced with sentencing a man who shows great potential and promise, who is a hard worker, a devoted father, yet who admittedly participated in a violent narcotics conspiracy (although, as the Government would agree, Mr. Ashley was NOT involved in any acts of violence or weapons possession).

As shown by the Pre-Sentence Report, Mr. Ashley was born and raised in Buffalo, New York. Both of his parents are disabled; his father was injured in a bicycle accident in 2001, and his mother was hurt in a car accident in 2019. Mr. Ashley has 5 siblings on his mother's side, all of whom are aware of his pending case and are fully supportive of him.

Mr. Ashley's parents split up when he was 7. His father was an alcoholic, and became abusive, to the point of using a belt on Mr. Ashley, when he was drunk. After the divorce, his mother began drinking as well.

In 2013, Mr. Ashley was at a party with friends when his close friend was shot and killed as a person fired into the party. That same year, Mr. Ashley was pistol-whipped during a robbery at a friend's house. Mr. Ashley was 23 at the time.

2013 was not an altogether unhappy year for Mr. Ashley: that was the year he met Morressa Johnson, the mother of his daughter, Skylar[2]. As a result of his bail conditions, Mr. Ashley is unable to spend much time with them outside of the home, but he remains close with all three of his daughters, speaking with them several times each week.

Ms. Johnson spoke with Probation, noting she believed Mr. Ashley likely became involved in the conspiracy for financial reasons. She also noted that she depends on him for childcare. She notes that two of his children were with him when he was arrested in this matter, and were concerned for his welfare.

Mr. Ashley shows a solid work history. Starting in 2013, Mr. Ashley worked full-time at a local Walmart. In 2015, he began working at a Home

---

[2] Mr. Ashley also has two daughters with Ms. Danajia Palmer.

Depot, working 28 hours per week, and left the job to work at Buffalo Niagraa Contractors. With Buffalo Niagara, he also worked full-time, but was let go in the off-season. Starting in 2018, Mr. Ashley has worked full-time at George's Appliances in Niagara Falls.

Mark Milanovich, the president of George's Appliances, wrote on behalf of Mr. Ashley. As the owner of a family run 89 year old appliance store, Mr. Milanovich is undoubtedly concerned with the behavior of his delivery employees. As the letter shows, for the past four years, Mr. Ashley has been an exemplary and dependable employee. Mr. Milanovich is in the business of selling and delivering home appliances, including TV sets, dishwashers, and laundry machines. Having an employee he can trust is essential, and he notes how Mr. Ashley comports himself in a way that generates good will. In fact, Mr. Milanovich receives numerous calls complimenting Mr. Ashley's work ethic. Mr. Milanovich is aware of this case, and still fully supports Mr. Ashley.

Bishop Jeffrey Mustafa, the leader of the Ruach Healing Temple World Church, and Mr. Ashley's mentor for the past 6 years, sees him as a hard working, polite man, who tries to help others. Bishop Mustafa believes it is his desire to help others that got Michael Ashley into trouble in this case.

Thomas Lewis, a family friend, has known Michael for over 10 years. According to Mr. Lewis, Michael is always respectful to others, and is very family oriented. Similar to Bishop Mustafa, Mr. Lewis also notes Michael's work ethic. As an employment specialist, with a focus on those impacted by the criminal justice system, Mr. Lewis firmly believes Michael would benefit from a second chance in this case.

Ms. Johnson also writes on Michael's behalf. Like the other writers, Ms. Johnson mentions Michael's work ethic, writing that he even tried to go to work when he was sick. While working full-time at George's Appliances, Michael still found the time and strength to get their daughter to and from school, watch practices and games, attend parent meetings for her, all without complaining. As she states, "Michael put his life on hold" so she could successfully pursue her dream of becoming a Dental Assistant. Ms. Johnson closes by telling this Court she fully supports Michael; he will have a "huge support system behind him", full of people who want to see him succeed. This includes Ms. Johnson and their daughters.

Hon. P. Kevin Castel, United States District Judge
January 4, 2023
Page 5 of 7

Based on the letters, and Michael's uncontested work history, there is no question he has been, and continues to be, a hard-working individual. He is devoted to his family, respectful to others, and is a well-respected and valued employee. He deserves a second chance.

Under 18 USC § 3553 (2), this Court must also consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to provide deterrence, to protect the public from further crimes of the defendant, to provide the defendant with any needed rehabilitative services, and, where appropriate, to avoid unwarranted sentencing disparity.

At the outset, as noted above, there is little question the crime here is serious. Narcotics trafficking is a serious offense: as this Court has noted in sentencing other defendants in this case, the crime causes much harm in our society. However, Michael's participation in this case was extremely limited, as shown by his willingness and ability to take advantage of the Safety Valve. On three occasions, Michael helped Ra deliver cocaine. That was the extent of his participation in this conspiracy. While not an excuse, Michael's explanation for his participation was that he was worried the economic downturn during the COVID pandemic would cost him his job, and he wanted to earn some money as a cushion in case that happened.

A non-jail sentence would help to promote respect for the law in this case. While Michael was involved in a large scale narcotics conspiracy, his participation was very limited. In light of his work ethic and experience, and his acknowledged care and concern for his family, allowing him to remain at liberty while on probation would show the public that redemption, under the right circumstances, is possible.

In addition, a supervisory term for Michael would be just punishment under the facts of this case. For the past 20 months, Michael has been monitored by Pre-Trial Supervision with no issues. In fact, a few months ago, Pre-Trial agreed that Michael no longer needed to be subject to electronic monitoring or a curfew. His conduct since his arrest shows he has the potential to follow the rules and restrictions of probation while continuing to work and take care of his family.

In terms of both general and specific deterrence, a non-jail sentence would have the right effect. Probation is not freedom; anyone considering involvement in a narcotics conspiracy would certainly think long and hard about being subject to a court's directives and oversight for a period of years. As to specific deterrence, Michael will have a number of years under this Court's eye to consider his past conduct, and keep in mind the horrific consequences of backsliding.

As for protecting the public, considering how Michael has handled himself since his arrest is telling evidence of how he will behave going forward. For years before, and since his arrest, Michael has been a valued employee at George's Appliances, delivering and installing appliances with great feedback. He enters homes and businesses throughout the day, with nothing but compliments and accolades for his conduct and work ethic. Going forward, the public has little to fear from Michael.

In terms of rehabilitation, it is apparent that Michael has that aspect of punishment well in hand. Since his issues back in 2013 and 2014, he has done his best to find work and support his family. He wants to complete his education, and continue to work. While educational and drug treatment programs may be appropriate in this case, incarceration to mandate attendance is completely unnecessary. Michael has shown he is self-motivated, and with proper guidance and supervision he will undoubtedly continue to maintain his work ethic and further his education.

The final factor for this Court to consider is sentencing disparity. The leader of the conspiracy, Fernando Ra, was sentenced to 206 months. His conduct included multiple kilograms of cocaine, a violent kidnapping and assault, and weapons possession. He certainly deserved that sentence: Michael, who only assisted Ra on a few occasions, does not deserve any such jail time. The defendant who most closely tracks Michael's conduct in this case is Mr. Batista, who received a sentence of time served. Mr. Batista was far less involved than Mr. Ra, and did not participate in, but was aware of, Mr. Ra's violent activities (*See, e.g.* Gov. Sentencing Memo for Mr. Batista, Doc. 151).

Mr. Elmer Gill received a sentence of 36 months. His guideline range was 46-48 months: this Court sentenced him to 36 months. Unlike Michael, Mr. Gill was more involved with Mr. Ra, discussing firearms, sending pictures

of handguns, all showing that Mr. Gill was more intimately involved with Mr. Ra and his violent activities. As such, a sentence of 36 months was appropriate for his conduct. To the contrary, Michael had no knowledge of, or involvement in, Mr. Ra's violent crimes. Instead, he helped Mr. Ra on three occasions, without any involvement in Mr. Ra's other criminal activities. Accordingly, a sentence significantly lower than that of Mr. Gill's would be appropriate here.

In many families, a cycle of abuse continues through generations. Here, despite an abusive and alcoholic father, and an abusive mother, Michael grew up to be a devoted father and partner. Although his father had not worked since 2001, Michael nonetheless developed an outstanding work ethic. Michael has shown great potential so far, despite the issues in his upbringing, and has shown this Court he understands and complies with the court's directives and rules. Even Probation recognizes the hardships Michael has faced, and the progress he has made (*See,* PSR p 25), and recommends a downward variance for a sentence of 32 months.

It is our contention, based on the foregoing, that a jail sentence is greater than necessary to achieve all the ends of sentencing. Here, the requested sentence would acknowledge the seriousness of the offense, would provide sufficient deterrence and just punishment, and would be sufficient, but not greater than necessary, under all the facts of this case.

Thank you for your consideration in this matter.

Very truly yours,

David K. Bertan

DKB
cc:    AUSA Bhaskaran (Via ECF)